## TEXAS & P. RY. CO. v. JUNEMAN.

(Circuit Court of Appeals, Fifth Circuit. December 3, 1895.)

### No. 397.

1. NEGLIGENCE OF RAILROAD COMPANY—STEER RUNNING AT LARGE.

Where a steer, which, owing to its crippled condition, has been removed by a railroad company from a car to be killed, is allowed to recover, and, in an apparently vigorous condition, roam around the railroad yard, which is open to the public, without an attempt to control it, the company is liable for one injured by the steer while passing through the yard.

2. SAME—INDEPENDENT CONTRACTOR.

One engaged by a railroad company under a verbal contract to remove dead and maimed cattle from the railroad yard, who is paid in the same way and at the same time as laborers generally in the service of the company, and may be discharged in the same way, is not such an independent contractor that the company is exempt from liability for injuries caused by his failure to remove a crippled, but dangerous, steer.

In Error to the Circuit Court of the United States for the Northern District of Texas.

T. J. Freeman and George Thompson, for plaintiff in error.

M. D. Priest and R. J. Boykin, for defendant in error.

Before McCORMICK, Circuit Judge, and BOARMAN and SPEER, District Judges.

SPEER, District Judge.    Minnie Juneman, the plaintiff, brought her action for damages against the Texas & Pacific Railway Company. She alleged that the defendant company was engaged on the 20th of April, 1893, in transporting large numbers of wild cattle.    On that day she was walking in the city of Ft. Worth, Tex., on a public street crossing the track of the railroad.    While on the right of way, she was attacked by a vicious and dangerous steer, which the employés of the defendant company had, in a negligent and careless manner, permitted to escape from a car of wild cattle, and to run at large. She was knocked down by this animal.    Her right elbow was dislocated.    She received a severe contusion and abrasion on the ear, and the lower extremity of her spinal column was contused and broken. Her injuries are permanent, and give great and constant pain, and her ability to earn a livelihood has been greatly impaired.    She is a widow, with several children dependent upon her, and is herself largely dependent upon her own work for a livelihood.    She received other injuries of a painful character, for which she was at the time of the trial under treatment, but from which she will probably recover, and also suffered intensely from freight, nervous shock, and prostration.

The Texas & Pacific Railway Company defend this action mainly upon the following grounds:    Denying that the plaintiff was injured in the manner described, although a partial effort was made to show that she provoked the steer by an ineffectual attempt to throw a stick or stone at it.    The principal ground of defense relied upon is that the company had a contract with one Henry Campbell, a colored man, who undertook to take charge of and dispose of all dead and injured animals at its stockyards; that he was not in the employ of the defendant, but was an independent contractor; that, on the day of the injury, they did deliver to Campbell the steer which attacked the plaintiff; that Campbell took possession and control of the animal for the purpose of removing it to the dumping grounds, and thereafter the defendant had no further concern with it, and was and is wholly irresponsible for any injury it may have inflicted.    There are other grounds of defense which are not regarded as material.

At the trial the defendant requested that a number of special instructions be given to the jury, and among them the following:

"The court instructs the jury that it appears from the evidence that the animal which injured plaintiff was one which had arrived at Fort Worth, and had been left in the cars by the employés of the defendant company at the stock yards as an animal crippled so badly that it was impracticable to ship it further, and of no value.    It further appears from the testimony that this animal was delivered to one Henry Campbell, who had a contract with defendant to take charge of and carry away all animals of this character, and that said Campbell unloaded said animal for the purpose of taking it away. From these facts, and under the law, the defendant would not be liable for any negligence of the said Campbell while engaged in hauling the animals away after delivered to him, and you will therefore find a verdict in favor of the defendant."

The instructions were all declined, and the court charged the jury as follows:

"In this case the plaintiff charges that, while she was walking along one of the public streets of Fort Worth, a large and vicious steer attacked and injured her; that this steer was one of a number of wild steers which defendant had in its charge, and was transporting through Fort Worth, Texas; and that defendant, knowing the vicious character of said steer, turned him loose in, and allowed him to run on, the streets of Fort Worth; and that such negligence was the cause of her injuries. She says that her right elbow was bruised and dislocated, and her left ear was contused and abraded, and the lower extremities of her spinal column were broken and contused, by the attack of said steer. She says that the injury to her right arm is permanent; that it is still, and always will be so, and of little use to plaintiff; that said injury to her ear is permanent and that her hearing is permanently impaired; that the said injury to her spinal column is permanent, and gives her constant pain; that her ability to work and earn a living has been permanently impaired by said injuries, inflicted on her by said steer,—for all of which she says she has been damaged in the sum of $15,000, for which she asks judgment. She also says that her womb was injured by the attack of said steer, and that she has suffered greatly, mentally and physically, by reason of her said injuries.

"(2) Defendant denies all the charges of plaintiff.

"(3) If the jury believe from the evidence that the steer which injured plaintiff was in charge of the defendant, and that it turned it loose in the city of Fort Worth, and that it injured plaintiff, as alleged, when she was on a public street running across defendant's railway track, then you will find for plaintiff the sum you think she is entitled to under the evidence, not to exceed $15,000, unless, under instructions hereinafter given, you find for defendant.

"(4) The negligence of defendant must have been the proximate cause of plaintiff's injuries, to enable her to recover in this cause. If defendant, through its employés, suffered said steer to be at large, and such act by the defendant was negligence on its part, and was the real cause of the injuries to plaintiff, then, in law, such negligence on the part of defendant would be the proximate cause of plaintiff's injuries. Was there negligence on the part of defendant in suffering said steer to run at large. Defendant was chargeable with such care as an ordinary prudent man would have used under the circumstances in keeping said steer from going at large in the city of Fort Worth. Any less care on its part would be negligence, and the amount of care indicated, if used by the railroad, would save it from responsibility. If it occurs to you that such injuries as were inflicted on plaintiff were unusual and seldom occur, that fact will cut no figure in the case if you find that defendant was negligent, as indicated above, in suffering said steer to be at large.

"(5) The arrangement with Campbell to carry off dead and wounded cattle did not constitute him a contractor in such sense as should relieve the defendant from responsibility, if any attached, under the facts of this case and the foregoing charges."

The jury found for the plaintiff damages in the sum of $5,500, but afterwards she remitted $1,500, and judgment was taken for $4,000, with interest and costs. The defendant moved in the court below for a new trial, and, by writ of error, brought the cause before this court. There are numerous assignments of error, but since it is evident from the able and elaborate brief of counsel for the plaintiff in error, that they rely chiefly upon the contention that Campbell, charged with the custody of maimed and dead cattle, should bear the burden of responsibility for the injuries plaintiff has sustained, and since other grounds do not, in our judgment, suffice for a reversal of the action of the circuit court, we will discuss that briefly.

Campbell testifies as follows:

"I am a contractor with the Texas & Pacific Railroad Company, and haul off dead stock from the Texas & Pacific stock yards. If I don't haul anything, I don't get any pay. I am responsible for all nuisances around the yard, and, if the sanitary officers find any nuisances there, I have to pay for it. I take charge of the stock just as soon as they are put down on the side track. I take out the live ones what is bruised and what is left in the cars crippled, and shove them down on the track, and knock them in the head, and shove them out. I will say that all cattle that comes there to the pen, and are crippled, and can't stand up, are marked 'dead.' * * * I have them all throwed out, and those that are too badly crippled I knock them in the head, and haul them out to the city dumping ground. When I took this contract, a year ago, the railroads had no place to put these dead animals, and sometimes they would let them lay until they were fined by the city. They asked me if I couldn't get a place to put them, and they (the city people) purchased a dumping ground, and the city gave me the permission of carrying all the dead cattle to that dumping ground, in preference to anybody. * * * And I am responsible for every crippled cow that comes there. If I don't knock the badly crippled ones on the head, I am responsible. If anything is crippled on the track there, I am responsible for it."

Of the steer in question, he testifies:

"The night before, I had knocked it in the head with an ax, and the next morning its skull was broke, and I hadn't hit him high enough, and I knocked two other dead ones just the same time. All his side was broken away, and I expect that the steer had some of his ribs broken. I throwed that one out on the ground, and, when I came back, he was up there. They told me what he had done. I was throwing them out of the car myself that day, and it was close about noon when I throwed this one out of the car. * * * I can't give the contract up to-morrow if I want to, according to my word. I didn't do any writing, but I told Captain Clements I would take it from the 1st of the year to the 1st of the year, and that is my word with the city officers and the sanitary officers; but I am responsible for the work from the 1st of January to the 1st of January."

It otherwise appears from the testimony that the contract with Campbell was verbal, and that he was paid in the same manner and at the same time, if not in the same amount, with other laborers in the service of the defendant company, and that he might be discharged in the same manner. We find it difficult to conclude, as insisted by the defendant company we should, that Campbell was an independent contractor in such sense as will relieve the defendant from the consequences of the painful injuries that the plaintiff sustained because of his negligence. Notwithstanding the influence which this man seems, if we must accept his testimony, to have exerted with the sanitary and other officials of Ft. Worth, and the confidence reposed in him by the Texas & Pacific Railway Company, it cannot, we think, be successfully maintained that, in granting a charter to the company, it was contemplated by the legislature that he should bear or share any of the responsibility to the public which the creation of that charter and its acceptance by the company involved. That the company, in its business, would transport dangerous animals, was, of course, to be expected. It was their duty to handle and control them in such manner as would involve no injury to the public. 1 Thomp. Neg. 208, 209, 216. This is a matter directly involved in the act of transportation itself, and the company cannot escape its responsibility to the general public for the carelessness and negligence of an

agent during the performance or attempted performance by him of a part of the identical service for which it was chartered. "When a corporation owes a duty either to its employés or to the public, it cannot delegate the performance of that duty to a substitute." Gibbs v. Gas Co., 130 U. S. 410, 9 Sup. Ct. 553; Thomas v. Railroad Co., 101 U. S. 71; Railroad Co. v. Winans, 17 How. 30; Railway Co. v. Kernan, 78 Tex. 294, 14 S. W. 668; Water Co. v. Ware, 16 Wall. 567; Mechem, Ag. § 747; Burton v. Railway Co., 61 Tex. 526. In legal contemplation, then, Campbell was an agent of the defendant company. That there was negligence is plain. He intended, as it appears by his own statement, to kill the steer after throwing it out of the car. He thought he had done so. Now, it was easy for the company to make certain the death of this animal, and anything short of this, under the circumstances, was negligence. Stuart v. Crawley, 2 Starkie, 323; Ang. Carr. § 214. The fact is it was not killed, but was permitted to recover its strength in large measure, and to go about without control in a populous city. It had sufficient vigor the next morning, according to the testimony of an engineer in the employ of the company, to attack one of the engines, and persisted in doing so until it was prodded off of the track; and it was not secured until it had inflicted the distressing injuries which the plaintiff sustained, when it was easily roped and killed. Indeed, it is not in dispute that this dangerous animal roamed for many hours around the railroad yards, which were open to the public. This was known to several employés of the company. It does not appear that these particular employés were charged with the duty of securing the steer or communicating its dangerous presence to the company, and a request to so charge was based by the defendant upon that fact. Conceding the force of this, nevertheless it is true that the railway company should have had some watchman or other employé whose duty it was to guard and patrol the yards, and protect the public from such occurrences as resulted in injury to the plaintiff. Whether there was no such officer, or whether such a one failed in his duty, in either event the company was liable.

Under all the circumstances, the presiding judge properly refused the instructions requested, and committed no error that will justify a reversal of the cause. The recovery, especially since a large portion of it was remitted, is reasonable, and we find that the judgment should be affirmed.