## OKLAHOMA RAILWAY CO. et al. v. BOYD.

No. 18903. Opinion Filed Feb. 19, 1929.

Rehearing Denied Nov. 26, 1929.

46

Shartel & Gilliland and John H. Vossbrink, for plaintiff in error Oklahoma Railway Company.

M. W. McKenzie, Municipal Counselor, for plaintiff in error Oklahoma City.

Ledbetter, Stuart, Bell & Ledbetter and A. G. Morrison & Sons, for defendant in error.

JEFFREY, C. This action was begun by W. H. Boyd against the city of Oklahoma City and the Oklahoma Railway Company to recover damages growing out of floods on the North Canadian river in June and October, 1923. W. H. Boyd is hereinafter referred to as plaintiff, the city of Oklahoma City as defendant, and the Oklahoma Rail-

way Company as codefendant. Plaintiff's petition alleged, in substance, that prior to 1923, codefendant owned and operated an interurban railway line between Oklahoma City and El Reno; that it owned a right of way upon which its tracks and property were located; and that where said right of way and tracks crossed the North Canadian river between Oklahoma City and El Reno there was a dump or embankment constructed according to the lay of the land, with three waterways or openings in the same sufficient for the passage of water through said embankment, and that said embankment was so constructed that in time of flood the waters could run over said embankment and railway tracks without being diverted from the first bottom along said stream, and without causing it to flow over adjoining lands situated on the second bottom along said river; that prior to 1923, defendant, being desirous of enlarging and improving its water supply for the inhabitants of said city, undertook to construct a large reservoir on said river by constructing a dam across it about two miles below codefendant's right of way where it crosses said stream. It was further alleged that said defendant, as a part of its water program, desired to construct above codefendant's right of way and on said stream a settling basin; and thereupon, by permission of codefendant and with its aid and assistance, defendant closed up the waterways or openings in codefendant's embankment where the same crossed the river, and built said embankment eight to twelve feet higher, and diverted the water of said river directly east, and constructed a waterway through said embankment only about one-third in carrying capacity of the openings which formerly existed through said embankment, and caused the water of said stream to flow down a by-pass or a new channel. Plaintiff alleged that he was the owner of certain lands situated on the west side of the river in Canadian county, and on the south and the north sides of codefendant's railway tracks on the second bottom of said river; and had growing thereon, and upon other lands rented by plaintiff, certain farm and garden crops; that in June, 1923, because of heavy rainfall, flood water came down said river in great volume, and due to defendant and codefendant having closed the waterways through codefendant's embankment across said stream and bottom, there were not sufficient waterways to take care of the flood waters, and the embankment was raised to such height that the water could not go over, and by reason thereof said flood waters backed up on to plaintiff's premises on the north of the railway tracks, into his residence and over his farm crops. All of which destroyed certain portions of his land and destroyed and damaged certain crops standing; that in October, 1923, another flood of greater magnitude than that of June came down upon said embankment, and the waters thereof being unable to pass freely, backed on to plaintiff's farm lands, into his residence, ran over the railway right of way at the west end of the embankment, washed and destroyed certain parts of his land, destroyed and damaged various crops, live stock and household goods and furnishings to his damage in the total sum of $10,784.

To plaintiff's petition, defendant filed an answer, in which it denied the allegations of damage and pleaded specifically that, if plaintiff sustained the damage complained of by reason of said flood, such damage was the direct and proximate result of unprecedented storms and floods and other acts of God, which could not, with reasonable diligence, have been anticipated, and that said damage was not the result of the construction of said waterworks, but was due to acts of God. Codefendant answered by denying that plaintiff sustained any damage by reason of its negligence, but that if he sustained such damage, it was due to the carelessness and oversight of defendant, or to unprecedented floods, which were the acts of God.

Plaintiff filed replies to each of the answers denying the material allegations of new matter set forth therein. On the issues thus formed, the cause was tried to a jury and a verdict rendered in favor of plaintiff and against codefendant and defendant, jointly, in the sum of $5,333. Judgment was duly rendered thereon, and from this judgment and order overruling motion for new trial, defendant and codefendant have each appealed. Plaintiff's petition contains three causes of action, but, for the purpose of passing upon the questions raised, they may be considered as one.

The first objection presented by the defendant is that it, being a municipal corporation, could only be sued in Oklahoma county, in which it was situated; and that the district court of Canadian county did not have jurisdiction to render judgment against it after proper pleadings of privilege and objections had been made. It appears from the record that the city of Oklahoma City was served with summons by delivering a copy thereof to the mayor of Oklahoma City in Oklahoma county, on the 5th day of March, 1925, and codefendant was served

by delivering a copy of the summons to George Henshaw, receiver for said corporation. On April 3, 1925, the defendant filed in said cause a motion to require plaintiff to make his petition more definite and certain in certain particulars. On the same day said defendant filed in said cause a general demurrer to plaintiff's petition. On May 27, 1925, codefendant filed its answer. On May 29, 1925, the defendant filed a motion to dismiss, alleging that the district court of Canadian county had no jurisdiction to try said cause for the reason that the defendant was a municipal corporation, a resident of Oklahoma county, and could not be sued outside of the county of its situs. This motion was overruled, and defendant incorporated in its answer, filed April 13, 1926, an objection to the jurisdiction of the court.

The question is not, strictly speaking, one of jurisdiction. The district court of Canadian county, being a court of general jurisdiction, had undoubted cognizance of the subject-matter. The question is one of venue. At common law an action against a municipal corporation was regarded as inherently a local action, and could be brought only in the county in which the municipality was situated. And counsel for defendant contend that there has been no statutory modification of the common-law rule in this regard in this jurisdiction. It appears that the weight of authority from other jurisdictions supports this contention, but we think it unnecessary to decide the question, since it appears from the record that the defendant waived its right, if such right existed, to be sued in the county of its situs, and consented to the jurisdiction of the district court of Canadian county over its corporate person. Could the defendant, and did it, acting through its municipal counselor, waive its right to be sued in Oklahoma county, granting that such right existed? The general rule relating to waiver of such rights is stated in 27 R. C. L. 783, par. 6, as follows:

"A requirement as to the particular district or county in which a suit on a transitory cause of action shall be brought is commonly regarded as modal or formal, and therefore the subject of waiver, either express or implied, by the parties. That the action is tried in a county other than that declared by statute the proper county for its trial does not go to the jurisdiction and does not invalidate the judgment. This is true as well in the case of federal as of state statutes. Thus, the exemption of national banks from suits in state courts elsewhere than in the county or city in which

such banks are located was prescribed for the convenience of those banks, and is a privilege which they can waive. A public officer may decline to avail himself of a statute making suits against him for acts done in his official capacity triable in a particular place. And a foreign corporation may waive improper venue in an action to which it is a party. In many jurisdictions a like ruling is made with regard to actions essentially local in character, as actions for damages for injuries to realty, even though the realty is located in another state."

This court has repeatedly held that lack of jurisdiction over the person may be waived by proper appearances; and the filing of an answer, general motion or general demurrer constitutes a waiver of defect in service of summons or other defects in jurisdiction over the person. Burke v. Mallaby, 14 Okla. 650, 78 Pac. 105; Valley Abstract Co. v. Page, 42 Okla. 365, 141 Pac. 416; Willet v. Blake, 39 Okla. 261, 134 Pac. 1109; Ziska v. Avey, 36 Okla. 405, 122 Pac. 722. We are unable to see why there should be a distinction between a natural person and a municipal corporation as regards their respective authority to waive such rights or privileges. In the case of City of Corpus Christi v. Oriental Oil Company (Tex. Civ. App.) 246 S. W. 718, wherein the venue of an action against a municipal corporation was under consideration, it is stated:

"The district court of Dallas county had jurisdiction of the cause of action alleged because its jurisdiction is coextensive with the territorial area of the state of Texas, and except for the plea of privilege interposed, its judgment finally entered would have been a valid determination of the case."

In the case of Ireton v. Mayor of Baltimore, 61 Md. 432, an action was brought against the mayor and city counsel of Baltimore for damages done his real estate by reason of said city having constructed a lake nearby his premises. It is the rule definitely established in that state that a municipal corporation is entitled to be sued within its territorial limits. The action in this case was without the territorial limits of the city, but the summons was served and the municipal counselor entered his general appearance and filed a plea on behalf of the city. Thereafter the court granted the city permission to withdraw its plea and move to quash the writ of summons. The summons was quashed, and the sole ground upon which this action was defended in the appellate court was that a municipality could not be sued outside its terri-

torial limits. The syllabus in that case is as follows:

"Where the subject-matter of the suit is one over which the court has jurisdiction, the appearance of the defendant by attorney waives the objection to the jurisdiction.

"After an appearance it is too late to object to any infirmity in respect to the service of the writ or summons, except where the appearance is made for the special purpose of raising the objection."

See, also, 44 C. J. 1472.

We think that the right to be sued in Oklahoma county, if such it was, was a mere privilege which could be waived. But counsel for defendant contends that the municipal counselor is without authority to waive such a privilege so as to bind a municipal corporation. The case of Oklahoma City v. McWilliams, 108 Okla. 268, 236 Pac. 417, is cited in support of this contention. In the McWilliams Case a number of suits were brought against Oklahoma City by certain police officers for salaries alleged to be due them in a justice of the peace court. No summons was issued or served upon the mayor as required by law, but the municipal counselor waived the issuance and service of summons for the city, entered a general appearance for the city, and confessed judgment. Thereafter, the justice of the peace attempted to enforce payment of the costs in said action by a mandamus proceeding. The cause was appealed to this court, and it was held that such municipal counselor was without authority to acknowledge service of summons and confess judgment against the city. It is particularly pointed out that by virtue of section 243, C. O. S. 1921, a summons against a municipal corporation must be served upon the mayor, and that no provision is made for service of summons upon a municipal counselor. The court there quotes with approval from 28 Cyc. 1764, as follows:

"The corporation's counsel has no larger powers to bind his client than those connected with the ordinary relations of attorney and client, and he cannot waive the issuance and service of process so as to give jurisdiction by his mere appearance."

The second paragraph of the syllabus, which reflects the holding on the question most nearly related to the question here under consideration, is as follows:

"A judgment against a municipal corporation rendered without service being had upon said municipal corporation, as provided by section 243, Comp. St. 1921, and without service of summons being waived or accepted by anyone authorized to accept service or waive same, is invalid."

We think the case at bar presents a different situation. Summons was issued and served upon the mayor as required by law. Granting that the city had the privilege of being sued in the county of its situs, it did not attempt to exercise that privilege until after it had submitted itself to the jurisdiction of the district court of Canadian county for all purposes. The city charter of Oklahoma City provided in part as follows:

"The city attorney shall be called municipal counselor and it shall be his duty to advise the board of commissioners, and each member thereof, and all heads of departments upon all law questions, and he shall give opinions in writing, if requested, and **shall represent the city as leading counsel in all courts for or against the city. * * *"**

By charter the municipal counselor is made the representative of the city in all litigation in all courts for or against the city. To say that such a representative could not enter an appearance or file a pleading in a court of competent jurisdiction which would bind his client after the issuance and service of summons, though such may be defective, would lead to absurd situations. Such a course of reasoning would lead to the conclusion that the city could never be bound by the acts of its municipal counselor at any stage of litigation, without formal action of the city authorizing such, or an appearance by the mayor and commissioners. Litigation is invariably carried on by such representatives, and seldom, if ever, the mayor or other city official appears in the proceeding or knows much, if anything, about the nature thereof. It would be unwholesome, indeed, to lay down a rule that after summons had been issued from a county other than the situs of a defendant city, served upon the mayor of such city, and after the municipal counselor, under a charter provision such as quoted above, entered the general appearance of the city and filed a pleading in good faith, such city would not be bound thereby. We conclude that the appearance and filing of pleadings prior to the plea of special privilege constituted a waiver of the privilege, if such privilege existed, to be sued in Oklahoma county, and a consent to a trial of the necessary questions involved in the litigation.

At the trial plaintiff introduced in evidence, over objections of defendant and codefendant, a written contract between defendant and codefendant entered into on the

6th day of September, 1918, whereby the defendant obtained permission to change, elevate and widen the codefendant's embankment along its right of way across the first and second bottom on the North Canadian river. Defendant contends that this contract shows upon its face that defendant either became the owner of the embankment, or that the defendant was an independent contractor; that no joint liability existed under said contract against defendant and its codefendant; and that it was prejudicial error to admit same in evidence. The contract together with the exhibit attached, in substance, recites that codefendant is the owner of a right of way for railway purposes at said point and owns an embankment along said right of way across the stream with three vents or openings for the passage of water; and that defendant is constructing reservoirs and other works connected with its water system, and desires to use that portion of codefendant's right of way, covered by the embankment, for the purpose of a diversion dam. It is then mutually agreed that defendant will construct and maintain as a part of its dam a double track roadbed with a crown of 40 feet, and to raise the elevation of said embankment approximately 10 feet. It is further provided that defendant shall substitute for the present bridges and openings in said embankment a single track creosoted pile bridge according to the standard specifications of codefendant for similar structures over running streams; and that the work of constructing said bridge shall be under the supervision of codefendant's engineer, subject to his inspection and acceptance or rejection during the course of the construction or on its completion; or that codefendant will itself construct said bridge, the cost thereof plus 10 per cent. for supervision, tools and machinery to be paid for by defendant. It is further provided that codefendant may build additional bridges whenever it sees fit provided it will not impede or obstruct the opening left in said embankment for the passage of water. It is further provided in said contract that defendant may increase the width of said embankment so as to provide a roadway for ordinary travel, and that in any event defendant shall riprap or beach the slopes of the embankment and keep the same repaired against washing and eroding. The contract further provides that defendant shall indemnify and protect codefendant against any negligence in the construction or maintenance of said dam, including injury to third persons; and specifically recites that codefendant shall not be a party

to the construction of said dam, nor an owner thereof as to the public or outside parties; and that defendant assumes all responsibility for the proper construction and maintenance of said dam.

We find nothing in the contract which indicates that codefendant intended to make a bona fide conveyance of its entire interest in the embankment or right of way to the defendant. By the contract, defendant, by doing certain things, acquired the mere right to use the embankment. Codefendant, under the contract, did not surrender any of its rights in the embankment to defendant inconsistent with its right of ownership, or inconsistent with its right to use the same for a roadbed.

When codefendant first constructed its embankment across said stream, it owed a duty to third persons situated along said stream in that vicinity to construct its embankment so as not to obstruct the natural flow of water during normal flow or during ordinary floods so as to flood and injure such third persons. Codefendant did construct its embankment, according to plaintiff's evidence, with three openings approximately 200 feet in width. One opening was left over the main channel of the stream, one on the west first bottom, and one on the east first bottom to accommodate flood waters. And so far as the evidence discloses these passageways were sufficient to accommodate flood waters in that stream from the time of the construction of the dam up to the time the changes were made. The duty which codefendant owed to the adjoining landowners and to other third persons similarly situated to not obstruct the flow of water in the stream so as to cause them damage did not change with time. It still owed this duty to such persons at the time it entered into the contract with defendant. This was a nondelegable duty so long as it owned the right of way. It is too well settled that one cannot escape the burden of an obligation imposed upon him by law by engaging for its performance by a contractor. Codefendant, being under obligation imposed upon it by law to leave sufficient openings through its embankment for the flow of water to be reasonably anticipated, could not delegate the duty of rebuilding the embankment to another so as to escape liability for the violation of a positive legal duty owing to third persons. Ohio R. Co. v. Morey, 47 Ohio St. 207, 7 L. R. A. 701, 24 N. E. 269; Texas & P. R. Co. v. Juneman, 18 C. C. A. 394, 71 Fed. 939; Sanford v. Pawtucket St. R. Co., 19 R. I. 537, 33 L. R. A. 564, 35 Atl.

67; Sciolaro v. Asch, 198 N. Y. 77, 91 N. E. 263. The case of C., O. & W. Ry. Co. v. Wilker, 16 Okla. 384, 84 Pac. 1086, is particularly enlightening on this question.

The general idea entertained by the courts seems to be that a contractor, when engaged in a piece of work which if not performed in a certain manner will entail the nonfulfillment of a positive legal duty incumbent upon the employer, occupies the position of an agent in respect of the performance of the work. In the case of O. K. Boiler & Welding Co. v. Minnetonka Lumber Co., 103 Okla. 226, 229 Pac. 1045, the relation of joint tort-feasors is likened unto that of partners. It is there said that each member of the joint venture acts for himself as principal, and as agent for the other members, within the general scope of the enterprise. And the law of principal and agent underlies the conduct of the partnership business as to questions arising among the partners, and applies with equal force between the partnership and third persons.

The particular act of negligence complained of by plaintiff was the closing up of three passageways in the original embankment on codefendant's right of way, and putting in the place thereof only one passageway, which he contended was only approximately the size of one of the three which formerly existed. By the contract, codefendant assented to the doing of this and to the use of the dam by the city, and in return therefor the city agreed to raise and widen the dam and maintain it. Codefendant agreed to perform certain parts of the work, such as constructing the bridge over the new opening at the expense of defendant. Even though the bridge should be constructed by defendant, it was provided that it should be constructed under the direction and supervision of codefendant's engineer. It could hardly be said, in good faith, that codefendant with its skilled engineers knew less about the proper construction of the diversion dam than did defendant. The evidence discloses that codefendant did, in fact, construct the bridge over the new channel, and if plaintiff's evidence as to the manner of constructing the entire diversion dam is true, codefendant knew all the time that it was not being constructed in a proper manner so as to discharge its duty to those located along the banks of the stream. Codefendant furnished the right of way and the original embankment, and defendant furnished the labor and material with which to construct the diversion dam as it existed at the time of the flood. All acts of both parties were directed at the one result, that of constructing the diversion dam as it existed at the time of the flood. Codefendant says that it did not receive any benefits from the rebuilding of the embankment or diversion dam. However, it should be sufficient to say that its liability does not turn upon whether it actually received a benefit from the venture. We conclude that codefendant was responsible for the alleged negligent construction of the dam jointly with defendant. 26 R. C. L. 765, states:

"Where there is a breach of common duty, all the authorities agree that there is a joint and several liability."

In support of this declaration, numerous authorities are cited in the text entertaining this view on the question. We conclude that, under the terms of the contract, each of the parties agreed to engage in a joint undertaking in the construction of the dam. We do not think the court erred in admitting the contract in evidence.

Defendant next contends that the court erred in overruling its demurrer to the evidence in support of each of the three causes of action. Under this assignment of error, it is argued that the only evidence tending to establish actionable negligence against defendant and codefendant jointly was the written contract hereinabove referred to; that said contract was inadmissible; and that the evidence shows that the damage sustained on the part of plaintiff was the result of an act of God, and beyond the control of the defendant and for which the defendant cannot be made responsible. We have already held that the contract was admissible. The evidence otherwise is to the effect that codefendant owned a right of way across the river at the point in question; that it had an embankment across the first and second bottom of said river with three openings approximately 200 feet in length for water passage; that codefendant permitted the defendant to close all three openings, raise the embankment 8 to 12 feet higher, change the channel of the stream directly east, and leave only one opening approximately 200 feet for the passage of water. The bridge over the new channel was actually constructed by codefendant, but paid for by defendant. The evidence further shows that at the time of the flood in question the water on the north side of the embankment stood from 7 to 10 feet higher than on the south side of the embankment; that about the time the water reached its highest point, instead of flowing east in its natural course, it backed up and flowed west over the adjoining lands, and

over and across the embankment at the west end, and washed away several acres of plaintiff's land south of the embankment and to the west end thereof. Plaintiff's evidence further showed that the water backed up north of the diversion dam, and to the west over his crops, and up into his residence causing much damage to his property. This evidence unquestionably was sufficient to take the case to the jury on the question of negligence resulting from joint acts of defendant and codefendant.

The only remaining question under this assignment of error is, Was plaintiff's damage the result of an act of God for which defendant is not responsible? Numerous witnesses, who had lived in that vicinity from 15 to 40 years, testified that the October, 1923, flood was the greatest flood they had ever seen on the North Canadian river. One witness testified that he witnessed a flood on the North Canadian river in 1877, which was about equal to the 1923 flood in magnitude. The evidence further shows that at the time of the floods in question, the water in the stream was held back by the diversion dam, and that at times it stood from 6 to 10 feet higher on the north side of the dam than on the south side of the dam. Plaintiff also showed by the testimony of an expert witness, who was a civil engineer, that the channel created by the city had only a capacity of 12,000 cubic feet per second, while in his judgment the amount of water to be reasonably anticipated required an opening and channel with a capacity of 37,500 cubic feet. If the floods in question may be termed acts of God, there can be no question under this evidence but that the manner of constructing the dam with fewer openings than originally existed with a less carrying capacity than required, and causing the water to act as it did during the flood, was a contributing proximate cause of the damage sustained. One is not liable for damage resulting solely from an act of God; but if his negligence is a present contributing cause, which commingled with the act of God produces the injury, then he is liable notwithstanding the act of God. Chicago, R. I. & P. R. Co. v. McComb, 36 Okla. 41, 127 Pac. 488; M., K. & T. v. Johnson et al., 34 Okla. 582, 126 Pac. 567. We conclude that the court did not err in overruling the demurrer to plaintiff's evidence.

Defendant's next assignment of error is that the court erred in refusing to give the peremptory instruction requested by it. However, this assignment involves the same question, that is, the sufficiency of the evidence to support the verdict, as discussed last above, and need not be given further attention here.

Defendant next contends that the trial court erred in refusing to give its requested instruction No. 10. This instruction is as follows:

"You are instructed that if you find in favor of the plaintiff, you may find against the defendants jointly or against either the one or the other, as in your judgment the evidence may justify."

We have heretofore held that the evidence in the case, and particularly the written contract between defendant and codefendant, show that the construction of the diversion dam was a joint undertaking between defendant and codefendant. This being true, each was liable for the whole of the damages resulting from their tortuous acts. 26 R. C. L. 763. It naturally follows that it would have been improper for the court to instruct the jury that one of them may be relieved from liability. It was not error to refuse requested instruction No. 10.

Defendant presents the additional assignments of error:

"The verdict is not sustained by sufficient evidence.

"The verdict is contrary to the evidence and to the law.

"Error of the court in overruling the motion for new trial."

All questions raised under these assignments of error have heretofore been disposed of, and it will not be necessary to consider them separately.

Codefendant has also filed a petition in error and briefs the assignments thereunder under four propositions. Its first proposition is that the trial court erred in failing or refusing to consider certain admissions embodied in the allegations under plaintiff's first and second causes of action. The admissions referred to are in the form of allegations to the effect that it was the duty of defendant to open the flood gates in the main dam below codefendant's right of way, and the diversion dam at the time of the flood, which defendant had notice of several hours prior to the main rise in the river; that plaintiff requested defendant to open said flood gates to let the water pass, which it refused to do; and further:

"That their negligence in failing and omitting to open the said gates and let the water escape was a proximate cause of his said injury set out above."

It is then contended by defendant that if

the failure to open the flood gates in the main dam below the diversion dam was a proximate cause of the injury complained of, the negligent construction of the diversion dam could not be the proximate cause, and that the allegation in plaintiff's petition to this effect was an admission that plaintiff's injury was not the result of the joint negligence of defendant and codefendant in the construction of the diversion dam, and that plaintiff should be bound by such admission. With this contention we do not agree. There was no effort made at the trial of the cause to prove that plaintiff sustained any injury by reason of defendant having failed to open the flood gates as alleged in the petition. So far as the record discloses, this allegation was completely abandoned, and the court so treated it in his instructions to the jury. As we view it, such an allegation does not necessarily preclude any other theory of injury or idea that there were other contributing proximate causes of the injury. It was also alleged in the petition that the negligent construction or rebuilding of codefendant's embankment was a proximate cause of the injury. Certain parts of plaintiff's land alleged to have been damaged together with the crops thereon lay south of the diversion dam and in the near vicinity of the main reservoir, which would have been affected by the operation of the flood gates in the main dam. It would seem that both acts could have contributed to the injuries sustained, but no effort apparently was made to sustain the allegation with reference to the defendant's failure to open the flood gates. We are therefore of the opinion that the allegation of one set of facts should not be treated as an admission that the damage was not the result of the other acts alleged, and that the trial court did not commit error in this particular.

Codefendant next contends that it was the duty of the trial court to construe the written contract entered into between defendant and codefendant; that it either failed to do so, or else construed it erroneously, in that the contract shows upon its face that the negligence in the construction of the diversion dam, if any, was not the joint negligence of defendant and codefendant. This contract has been considered at considerable length under defendant's assignments of error, and no further consideration will be given it here except to say that it is apparent from the record that the court did construe it, and concluded that it disclosed a joint liability against defendant and codefendant. The trial court

instructed the jury on this theory, and we think correctly so.

The next proposition is that the court erred in refusing to give codefendant's requested instruction to the effect that the jury might find against both or either of defendants according to the evidence adduced during the trial of the case, and also in instructing on the theory of joint liability This question has also been considered and decided in the negative under defendant's assignments of error.

Codefendant's next and last proposition is that the trial court erred in refusing to give its requested instruction No. 15, to the effect that plaintiff could not recover for the damages to a one-third interest in the crops grown upon the land owned by plaintiff's mother. The evidence showed that a portion of the damaged crops owned by plaintiff were grown on rented land which belonged to his mother. With reference to the nature of the rental contract, the following evidence appears in the record:

"Q. I believe you stated you paid her cash rent? A. Yes, sir. Q. And how did you gauge the amount you paid her, Mr. Boyd? A. Whenever I sold a load of hay or a load of corn, I would take that check and give her a third of the money, I never gave her any of the crop. Q. You never gave her any of the crop? A. No. sir." (C.-M. 198.)

In the trial of the cause, when it appeared that codefendant questioned plaintiff's right to recover for damage to one-third of the crops grown on the land, plaintiff offered in evidence a petition in a suit then pending where his mother had brought an action against defendant and codefendant for damages to the land on which said crops were grown. At this point defendant and codefendant admitted that in that action plaintiff's mother was not seeking to recover for the crops grown on the land, but merely for damage to the land itself. It is codefendant's contention that plaintiff rented this land on the plan known as shares, whereby plaintiff's mother would receive one-third of the crops grown. We can see that the contract between plaintiff and his mother, as testified to by plaintiff, in certain particulars amounted to such a contract as codefendant contends for. However, plaintiff on more than one occasion testified that, under the rental agreement, he did not divide the crops with his mother, but marketed the same and paid her a cash rental based on a one-third interest from the proceeds of the sale. If the crops belonged to plaintiff, as he testified they did. and his mother had no right to possession of

54

a one-third interest in the crops themselves, or control over them, we think plaintiff had a right to maintain his action as sole owner of the crops. In any event codefendant would not be prejudiced by plaintiff's action for the entire damage to the crops, since the record shows that both plaintiff and his mother considered that the whole of the crops belonged to plaintiff, and that he had a right to maintain an action for the entire damage to the same. We are of the opinion that the court did not err in refusing codefendant's requested instruction No. 15.

We find no reversible error in the record, and the judgment of the trial court is therefore affirmed.

BENNETT, HERR, DIFFENDAFFER, and HALL, Commissioners, concur.

By the Court: It is so ordered.