ROBERT DONOHUE, administrator, *vs.* CITY OF NEWBURYPORT.

Essex.   March 7, 1912. — May 22, 1912.

Present: RUGG, C. J., BRALEY, SHELDON, & DECOURCY, JJ.

*Tree Warden. Municipal Corporations. Negligence,* Causing death. *Way,* Public: defect in highway. *Words,* "Corporation," "Business."

A tree warden is a public officer, whose duties are established by statute, and in the performance of those duties he does not act as the servant or agent of the town or city in which he is appointed.

R. L. c. 171, § 2, as amended by St. 1907, c. 375, relating to the liability of "a person or corporation" for causing death "by his or its negligence, or by the negligence

of his or its agents or servants while engaged in his or its business," does not apply to a town or city in connection with its ordinary municipal functions.

If a boy, who is a traveller on the sidewalk of a highway of a city, knows that the work of removing a dead tree on the edge of the opposite sidewalk is in progress and stops for a brief time to watch what is going on, when the tree for want of proper support unexpectedly falls across the street and causes his death, in an action by the administrator of his estate against the city under R. L. c. 51, § 17, it may be found that the boy was in the exercise of due care.

In an action by an administrator against a city under R. L. c. 51, § 17, for the loss of life of the plaintiff's intestate by reason of an alleged defect in a highway of the defendant consisting of a dangerous tree which fell upon the plaintiff's intestate, if there is evidence that the tree was on the edge of the sidewalk of a street of the defendant and was from two and one half to three feet in diameter at the base, that it had been struck by lightning a year or two before and was dead, that the tree warden was taking it down because it was dangerous to the travelling public, that men had been at work about the tree for a day or possibly two days before the accident, that on the day before the accident upper limbs had been sawed off and earth had been dug away from the roots, that no part of the street was roped off and no guards or signs were set up to warn the public of danger, although there was considerable travel on the street, and that the tree unexpectedly fell across the street apparently from want of support, the question, whether the tree had been a menace to travel for a sufficient length of time to constitute a reasonable notice to the defendant, is one of fact for the jury.

TORT by an administrator for causing the death of the plaintiff's intestate, a boy thirteen years of age, who, when returning from doing an errand for his mother, was killed by the falling upon him of a tree which stood on the edge of the sidewalk of Olive Street, a public way of the defendant, and was being cut down under the direction of the defendant's tree warden on October 22, 1910, the declaration containing two counts, one under R. L. c. 171, § 2, as amended by St. 1907, c. 375, alleging negligence of the tree warden, and the other under R. L. c. 51, § 17, alleging a defect in the highway of which the defendant had reasonable notice. Writ dated February 7, 1911.

In the Superior Court the case was tried before *Raymond,* J. The tree warden was appointed under the ordinance referred to in the opinion. It appeared that the tree in question was from two and one half to three feet in diameter at the base, that it had been struck by lightning a year or two before the accident and was dead and in parts rotten. The tree warden testified that his reason for taking it down was that he thought it was dangerous to the travelling public.

The tree warden and two or three of his subordinates had been working on the tree for a day or two before the accident, sawing off

the upper limbs, digging away the earth and cutting the roots. For some time before the accident the tree was not supported by ropes or in any other way. The plaintiff's intestate was on the sidewalk on the opposite side of the street from the tree, and the tree was not expected to fall in the direction-nor at the time that it did. The street was not roped off and there were no barriers or warning signs. According to the testimony of one witness the intestate when struck by the tree was walking toward his home; another witness testified that the boy had been standing there for a few minutes watching the tree. The tree unexpectedly fell across the street, striking the plaintiff's intestate who died without regaining consciousness.

The judge was of the opinion that the plaintiff was not entitled to go to the jury on either count, but submitted the case to the jury on the first count, stating to the counsel that, if the jury should find for the plaintiff, he should set the verdict aside and report the case. On the second count the judge ordered a verdict for the defendant.

On the first count the jury returned a verdict for the plaintiff in the sum of $8,000; and the judge set the verdict aside and reported the case for determination by this court. If the plaintiff was entitled to go to the jury on the first count, judgment was to be entered for him in the sum of $8,000 with interest from the date of the verdict. If the plaintiff was not entitled to go to the jury on the first count, but was entitled to go to the jury on the second count, by agreement of the parties judgment was to be entered for the plaintiff in the sum of $750 with interest from the date of the verdict. If the verdict on the first count properly was set aside and the verdict for the defendant on the second count properly was ordered, judgment was to be entered for the defendant.

*R. G. Dodge,* (*F. W. Johnson* with him,) for the plaintiff.

*A. Withington,* for the defendant.

RUGG, C. J. The plaintiff's intestate, while a traveller upon a public way in the defendant city, received mortal injuries from the fall of a tree within the way which the tree warden of the defendant was undertaking to remove.

1. He seeks to recover for the death of his intestate first under R. L. c. 171, § 2, as amended by St. 1907, c. 375. This statute permits recovery in the name of the executor or administrator in

a sum not less than $500, nor more than $10,000, to be assessed with reference to the degree of culpability of the defendant or his or its servants or agents, "If a person or corporation by his or its negligence, or by the negligence of his or its agents or servants while engaged in his or its business, causes the death of a person who is in the exercise of due care and not in his or its employment or service." An ordinance duly adopted by the city council of the defendant before 1910 provided that the board of aldermen should annually appoint a tree warden. St. 1910, c. 363, which took effect before the injury here complained of, imposed upon tree wardens in cities the duties of tree wardens in towns. R. L. c. 53, §§ 12 and 13, as amended by St. 1908, c. 296, §§ 2, 3. These two sections confer upon the tree warden absolute power respecting the setting out, care, maintenance and removal of shade trees and the enforcement of all provisions of law for their preservation, with the exception of trees under the jurisdiction of park commissioners, but of those also upon request of the park commissioners, and with the further exception that no shade trees shall be planted within a public way without license from the selectmen or road commissioners where such authority has been vested in them. These sections define the power and authority of the tree warden respecting shade trees. They leave substantially nothing in this regard for the municipal action of such cities as have no special charter provision touching the subject.

The planting, maintenance, care and removal of shade trees in highways is a service purely public in its nature, undertaken for the common good and without any element of private gain or special advantage to the municipality. Shade trees, though not originally the subject of legislative action, have been regulated to a very considerable and increasing extent by statute in recent years, until now the whole range of municipal action respecting them is covered. There is little if anything left to local control. The definition of public shade trees is statutory, and the discretion and sound judgment of an officer appointed by local authority controls wholly their care, preservation and removal. Shade trees are not objects of utility, but rather of beauty, grace and refreshment. The motive which prompts their planting and the object to be attained by their cultivation is a general benefit. Although the expediency and extent of municipal activity is

left to the wisdom of local instrumentalities of government and is not imperatively determined by the Legislature, the character of such beneficial work is distinctly the public weal rather than any private emolument of the city or town. It is plain that under principles firmly established in our law, the performance of these functions constitutes not private acts, but public service. A person, although appointed and paid by a city or town, performing such duties under a legislative mandate, is not a private agent or servant, but a public officer. The reasoning by which this conclusion is reached has been so often amplified and the rule is so deeply imbedded in our jurisprudence, that it is not necessary to do more than refer to a few of the leading cases: *Tindley* v. *Salem*, 137 Mass. 171. *Johnson* v. *Somerville*, 195 Mass. 370. *Postal Telegraph Cable Co.* v. *Worcester*, 202 Mass. 320. *Haley* v. *Boston*, 191 Mass. 291. *Smith* v. *Gloucester*, 201 Mass. 329. *Hathaway* v. *Everett*, 205 Mass. 246. *Harrington* v. *Worcester*, 186 Mass. 594. *Hill* v. *Boston*, 122 Mass. 344. *Bainbridge* v. *Postmaster General*, [1906] 1 K. B. 178. *Kerr* v. *Brookline*, 208 Mass. 190.

This principle of exoneration is not one of narrow or technical reasoning, but rests upon the broad foundation widely accepted in most jurisdictions, that an agency of government, while engaged upon duties imposed solely for the benefit of the public, is not liable for the negligent performance of such duty. The rule is elaborately discussed and the earlier cases collected by Knowlton, C. J., delivering the opinion in *Moynihan* v. *Todd*, 188 Mass. 301. To the same effect see *Rome* v. *Worcester*, 188 Mass. 307; *McCann* v. *Waltham*, 163 Mass. 344: *Barry* v. *Smith*, 191 Mass. 78; *Pinkerton* v. *Randolph*, 200 Mass. 24. The duty which the defendant was performing was sovereign and not private in its nature. It might have been taken over by the Commonwealth as it has been as to State highways. To hold the defendant under such a statute as this would subject it to responsibility when the State performing the same duty would be exempt. The general rule has an application wider than the law of negligence. For example, it relates to mechanics' liens, *Lessard* v. *Revere*, 171 Mass. 294, to liens for special improvements, *Worcester County* v. *Worcester*, 116 Mass. 193, and to taxation of property devoted to public uses, *Miller* v. *Fitchburg*, 180 Mass. 32.

It was held in substance, in *McCarthy* v. *Boston*, 135 Mass. 197,

that the care of shade trees was a function of sovereignty, and that those who had charge of it were public officers, and not agents of the municipality. The same result is implied in *Washburn* v. *Easton*, 172 Mass. 525, and *Chase* v. *Lowell*, 149 Mass. 85.

The case in this respect is distinguishable from *Butman* v. *Newton*, 179 Mass. 1, *Dickinson* v. *Boston*, 188 Mass. 595, and others of their class, which hold that a municipality, undertaking through its servants and in accordance with its own definite directions the care of public ways, instead of leaving the work to be done by public officers under their official responsibility, may be liable for the neglect of such servant, because of the private interest of the municipality in keeping the public ways in such condition that no financial harm may come to it from failure in their repair. This is an exception to the general rule. It does not extend to a case like the present, because the tree warden performs only duties established by statute according to the discretion reposed in him, and not according to the direction of city officials. He is, therefore, a public officer, and not a servant or agent of the city, as those words are used in St. 1907, c. 375.

But upon broader grounds the defendant must be exonerated from liability. R. L. c. 171, § 2, as amended by St. 1907, c. 375, does not apply to municipalities. It imposes liability upon "a person or corporation." Where these two words occur together, "corporation" is the only word which can be contended to include a city or town notwithstanding R. L. c. 8, § 5, cl. 16. That is a word which in our statutes and decisions has not been used generally to include cities and towns. In a certain sense they are bodies corporate. But in common speech it is rarely that a city or town is referred to merely as a corporation. Towns in New England differ in their nature from trading, manufacturing or public service corporations, and even from municipal corporations elsewhere. They are created primarily for political purposes and the convenient administration of government. They possess few of the characteristics which distinguish the ordinary corporation. *Bloomfield* v. *Charter Oak Bank*, 121 U. S. 121, 129. The town was the unit of local government in Massachusetts from the earliest times.

Towns have been spoken of usually by their distinctive name, which indicated their part in government as a territorial sub-

division rather than the fact that they are an artificial, corporate creation. They are thus referred to several times in the Constitution and its amendments. Although the Legislature always has had under the Constitution general power to provide for the establishment and dissolution of corporations, it was thought by the people not to be authorized to erect and constitute a city form of government. Hence art. 2 of the Amendments to the Constitution was adopted expressly conferring this power. *Hill* v. *Boston*, 122 Mass. 344, 354. *Warren* v. *Charlestown*, 2 Gray, 84, 101. This would not have been necessary if a city was simply a corporation. Most if not all of the city charters enacted by the Legislature pursuant to this authority do not describe the city as a mere corporation, but as a body politic and corporate or a municipal corporation. The form and arrangement of our statutes show a manifest purpose not to treat cities and towns as corporations in the ordinary sense of that word. Separate titles of the Revised Laws relate to them. R. L. "Title VII. Of Towns and Cities" comprehends chapters 25 to 34, both inclusive. Title VI, c. 20, relates to counties. Title IX, including chapters 36, 37 and 38, provides for parishes and religious societies and libraries. "Title XV. Of Corporations" comprehends chapters 109 to 126, both inclusive, and relates to all kinds of general corporations, both public and private, charitable and business, those clothed with the power of exercising eminent domain, as well as those having the most limited powers. A similar division has existed in the Revised, General and Public Statutes.

Even where cities and towns are authorized to enter the field of business enterprises, like the manufacture of gas and electricity, they do it not under the laws relating to private corporations set forth in R. L. c. 121, but under the special provisions contained in R. L. c. 34. Whether a city or town which has undertaken gas, electric lighting or water business would be liable for death occasioned in the conduct of it under this statute it is not necessary to determine here. See R. L. c. 25, § 31; c. 34, § 28.

When the Legislature has intended to include both municipal and business corporations within the scope of a statute, generally it has used plain words to that effect. For example, in St. 1909, c. 136, the language is "A county, city or town or any corporation." See also R. L. c. 51, §§ 17 to 21, both inclusive; St. 1909, c. 233.

The employers' liability act applies to municipalities not because they are corporations, but because they are employers, which is the significant word in that statute. *Coughlan* v. *Cambridge*, 166 Mass. 268, 276.

The decisions of this court, whenever the question has arisen, have held that a municipality commonly was not included within the word "corporation." *Riddle* v. *Proprietors of Locks & Canals*, 7 Mass. 169, 187. *Rumford School District* v. *Wood*, 13 Mass. 193. Often it is referred to as a *quasi* corporation. *Whitney* v. *Stow*, 111 Mass. 368. *Prout* v. *Pittsfield Fire District*, 154 Mass. 450. *Bishop* v. *North Adams Fire District*, 167 Mass. 364, 369. This is sharply brought out in *Linehan* v. *Cambridge*, 109 Mass. 212, where it was held that the word "corporation," as used in the statute as to interrogatories to parties to actions, did not include cities and towns. R. L. c. 173, § 61. See St. 1912, c. 276. A doubt was intimated in *Brooks* v. *Fitchburg & Leominster Street Railway*, 200 Mass. 8, 18, whether the present statute applied to cities and towns. The conclusion that "corporation" as used in statutes relating to trustee process included cities and towns was reached in *Adams* v. *Tyler*, 121 Mass. 380, purely upon historical considerations arising from a recommendation of commissioners on Revision of the Statutes rejected by the Legislature.

Generally it has been held that the word "corporation" does not include a municipal corporation. *Sherman County* v. *Simons*, 109 U. S. 735, 740. *Switzer* v. *Wellington*, 40 Kans. 250. *Brown* v. *Gates*, 15 W. Va. 131, 160. *Memphis* v. *Laski*, 9 Heisk. 511. *Iowa Electic Medical College Association* v. *Schrader*, 87 Iowa, 659. *State* v. *District of Narragansett*, 16 R. I. 424. *Owners of Lands* v. *People*, 113 Ill. 296, 314. *McDougal* v. *Hennepin County*, 4 Minn. 184. See *Hughes* v. *Auburn*, 161 N. Y. 96, 107. Most of the cases from other jurisdictions relied upon by the plaintiff are distinguishable either in the phrase or collocation of the statute from the one here under consideration. But if they are not plainly different in every respect we are not disposed to follow them.*

* *Anniston* v. *Ivey*, 151 Ala. 392. *Merkle* v. *Bennington*, 58 Mich. 156. *Keever* v. *Mankato*, 113 Minn. 55. *Davis* v. *Rumney*, 66 N. H. 331. *Murphy* v. *Board of Chosen Freeholders*, 28 Vroom, 245. *McCaughey* v. *Tripp*, 12 R. I. 449.

It cannot be presumed that the Legislature would intend to work such a radical change in the principles of liability for the performance of public benefit as would be wrought by construing the word "corporation" to include cities and towns, without the use of plain and unequivocal language.   A further confirmation of this view is found in the statute which has existed for more than a century imposing liability upon a municipality for death resulting to a traveller upon a public way from its defective condition.   R. L. c. 51, § 17.   The result is that on all grounds the plaintiff fails to make out a case on his first count.

2.   The second count of the plaintiff's declaration is founded on R. L. c. 51, § 17, which gives a remedy for loss of life occasioned by reason of a defect or want of repair upon a public way.

The deceased was a traveller, and may have been found to have been in the exercise of due care.   That he knew the work of removing the trees was in progress is not decisive against him, *Thompson* v. *Bolton,* 197 Mass. 311, nor that he may have paused for a brief time to watch what was going on.   *Gulline* v. *Lowell,* 144 Mass. 491.

The difficult question is whether the defendant had the previous reasonable notice of the defective condition of the tree which is a prerequisite to its liability.   There was evidence, from which it might have been found that the tree was from two and one half to three feet in diameter near its base and was dead, having been struck by lightning a year or two before; that parts of it were rotten; that some of the branches were in such condition that they might have blown off in a high wind; that men had been at work about the tree one or possibly two days before the accident; on the day before upper limbs had been sawed off, and earth had been dug away from its roots; that no part of the street was roped off, and no guards or signs were set up to warn the public of danger; that there was considerable travel on the street, and there were several houses on it and a store nearby.   The tree warden of the defendant testified without objection that he thought it was dangerous to the travelling public and that was the reason he was taking it down.   The tree fell apparently because of lack of support about ten o'clock in the forenoon.   We incline to the view that under all these circumstances it was a question of fact whether the tree had been a menace to travel

for a sufficient length of time to constitute a reasonable notice to the defendant. *Wright* v. *Chelsea,* 207 Mass. 460. *Burditt* v. *Winchester,* 205 Mass. 493. *Comerford* v. *Boston,* 187 Mass. 564, 566. *Stoddard* v. *Winchester,* 154 Mass. 149. *Pratt* v. *Cohasset,* 177 Mass. 488. It follows that the plaintiff had a right to go to the jury upon his second count.

In accordance with the terms of the report, let the entry be

> *Judgment for the plaintiff in the sum of $750 with interest from the date of the verdict.*