## OKLAHOMA CITY v. DISTRICT COURT OF THIRTEENTH JUDICIAL DISTRICT et al.

No. 24548. March 13, 1934.

Rehearing Denied May 8, 1934.

Harlan T. Deupree and A. P. Van Meter, for plaintiff.

Mark D. Libby, for defendants.

R. R. Bell and J. L. Trevathan, amici curiae.

ANDREWS, J. This is an original proceeding in this court instituted by the petitioner, the city of Oklahoma City, seeking a writ of prohibition to be directed to the district court of Canadian county, and Hon. Lucius Babcock, judge of that court, Frank Taylor, court clerk of that court, Thos. J. Horn, Leonard G. Lynn, Orvill Artt, Dudley B. Phillips, and Oscar A. Horn, commanding them to refrain from further proceedings in causes numbered 9291, 9292, and 9293 in that court.

The three actions in the district court of Canadian county were instituted against the petitioner for alleged damages to real estate and crops in Canadian county. Oklahoma City is situated in Oklahoma county. The basis of this action is that the district court of Canadian county does not have jurisdiction of the causes of action or the person of the petitioner for the reasons, as contended, that Oklahoma City cannot be sued outside of the county of its situs and cannot be served with summons in Oklahoma county in an action pending against it in Canadian county. No question is presented as to the correctness of the service of the summons upon the defendant if such service is authorized by law.

By reason of the importance to the public of the question presented, it will be determined on its merits rather than on a procedural question which is also presented in the briefs.

The Legislature of Oklahoma has made no provision for the venue of actions against cities, unless it has provided therefor in sections 109, 110, 111, 112, 117, or 206, O. S. 1931. Section 117, supra, provides for the venue of "every other action", meaning thereby actions the venue of which has been elsewhere provided for, except as therein provided. By its terms it is not applicable to actions the venue of which has been provided for by other sections. If the venue of the actions in question has been provided for by section 112, supra, the provisions of section 117, supra, have no application. Whether or not the venue of the actions in question has been provided for by the provisions of section 112, supra, is dependent upon whether or not the Legislature intended to include cities within the term "corporation" as used in that section. If it did so, that section provides the venue of the actions in question for they relate to causes of actions which arose in Canadian county. That section provides:

"An action, other than one of those mentioned in the first three sections of this article, against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, or be summoned, or in the county where the cause of action or some part thereof arose."

The first three sections of the article referred to therein are sections 109, 110, and 111, supra. The words thereof, "created by the laws of this state", were evidently used

to differentiate the venue of actions against the corporations sought to be provided for by the section from the venue of actions against corporations created by the laws of other states, commonly called "foreign corporations", for the venue of which provision was made in sections 115 and 125, O. S. 1931. The section (112) provides that the venue of an action against a corporation created by the laws of this state shall be (a) "the county in which it is situated", (b) the county in which it has "its principal office", (c) the county in which it has its principal "place of business", (d) the county in which "any of the principal officers thereof may reside", (e) the county in which any of its principal officers may "be summoned", and (f) the county "where the cause of action or some part thereof arose". As contended by the plaintiff herein, under the provisions of section 24, O. S. 1931, "Words used in any statute are to be understood in their ordinary sense, except when the contrary intention plainly appears, and except also that the words hereinafter explained are to be understood as thus explained". The plaintiff contends that under that rule of construction the word "corporation" in the section shall be held to apply only to private corporations and not to municipal corporations. However, the rule of construction applies equally as well to the word "situated" used in the section. The word "situated" is defined in Webster's New International Dictionary (1920), as "having a site, situation, or location; being in a relative position; permanently fixed; located; as, a town situated on a hill." Certainly a private corporation is not "situated" in a county. While in common speech it is rarely that a city is referred to "merely as a corporation", the section in question does not refer to a corporation "merely as a corporation." It refers to a corporation situated in a county. That language is more applicable to a city than it is to a private corporation. If it was the legislative intention that a municipal corporation should not be included in the meaning of the word "corporation", there was no reason for including in the section the word "situated", for ample provision was made for the venue of actions against private corporations by the other language used. The plaintiff contends that a city cannot be sued outside of the county of its situs. Evidently the Legislature used the word "situated" in the section with that thought in mind, that is, that cities might not be sued outside of the county of their situs, except where the cause of

action or some part thereof arose in the county in which the action is commenced. That construction gives full effect to all of the provisions of the section, and that is the construction which must be given to it when it is construed with section 176, O. S. 1931, which is as follows:

"A summons against a corporation may be served upon the president, mayor, chairman of the board of directors, or trustees, or other chief officer, or upon an agent duly appointed to receive service of process; or, if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk or managing agent; or, if none of the aforesaid officers can be found, by a copy left at the office or usual place of business of such corporation, with the person having charge thereof."

The evident meaning of the word "corporation" in that section is to include municipal corporations. The language is susceptible of no other construction.

The contention of the city is based largely upon what it says is a rule of the common law, that a city may not be sued outside of the county of its situs. It contends that that common-law provision is the law of this state by virtue of the provisions of section 2, O. S. 1931. That section does not provide that the common law shall be the law of Oklahoma. It provides that:

"The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object."

The common law does not remain in force in Oklahoma. The common law, as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people, remains in force in Oklahoma in aid of the general statutes of Oklahoma, but not in derogation of the general statutes of Oklahoma, and statutes in derogation of the common law are to be liberally construed to promote their object. The common-law meaning of the word "corporation" must yield not only to the common-law meaning of the word "situated", but to the condition and wants of the people, as explained in the section.

We are not unmindful of the decisions of the courts of many states cited in the brief of the plaintiff, but those decisions are neith-

er controlling nor persuasive as against a constitutional provision that every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm, or corporation by virtue of a franchise from said corporation (section 6, art. 18 of the Constitution), and statutes which authorize a municipality to go beyond the borders of the county in which it is situated and purchase, condemn, or otherwise acquire real estate, construct dams, construct artificial lakes, and otherwise damage real estate in those counties, rights which cities do not possess under the common law.

We have read with a good deal of interest the argument to the effect that this court should give the word "corporation", in the section in question, the same meaning as that given to it in article 9 of the Constitution, for the reason that the first section of article 9 of the Constitution defines the term "corporation" to exclude all municipal corporations. In Pure Oil Pipe Line Co. v. Cornish, 163 Okla. 79, 20 P. (2d) 1041, we held that the meaning of the word "corporation" in the Constitution is not necessarily the meaning of the word in a legislative enactment pertaining to another subject.

The plaintiff contends that under the statutes and the decisions of this court with reference to liens of laborers and materialmen, the term "corporation" does not include a municipal corporation. Be that as it may, there are many other general statutes where that term includes municipal corporations. As well might it say that the term "person" does not include municipal corporations. By the provisions of section 35, O. S. 1931, the word "person", except when used by way of contrast, includes not only human beings, but bodies politic or corporate. Section 6349, O. S. 1931, provides that all cities governed by the provisions of that chapter "shall be bodies corporate and politic." Under the statutes of Oklahoma, cities are not only political organizations but corporations, and they are given authority by the provisions of that section and power to "do all other acts in relation to the property and affairs of the city, necessary to the good government of the city, and to the exercise of its corporate and administrative powers." By the provisions of section 6350, O. S. 1931, they are given all of the authority given by the Constitution to engage in business, and every city containing a population of

more than 2,000 inhabitants is given the right and power to acquire, own, and maintain, within or without the corporate limits of such city, real estate for sites and rights of way for public utility and public park purposes, and for the location thereon of waterworks, electric light and gas plants, aviation airports, hospitals, quarantine stations, garbage reduction plants, pipe lines for the transmission and transportation of gas, water, and sewerage, and for any plant for the manufacture of any material for public improvement purposes, public buildings, and for all such purposes have the power to exercise the right of eminent domain, either within or without the corporate limits of such city, and to establish, lay, and operate any such plant or pipe line upon any land or right of way taken thereunder; and have and exercise the right to manufacture any material for public improvement purposes, and to barter or exchange the same for other material to be used in public improvements in such city, or to sell the same to other cities for like purposes. Under the provisions of section 6403, O. S. 1931, a city council may purchase or condemn and hold for the city, within or without the city limits, all necessary land for hospital purposes and waterworks, and erect, establish and regulate hospitals, workhouses and poorhouses, and provide for the government and support of the same. Additional rights are granted a city under the provisions of article 4, chapter 33, O. S. 1931. These and many other rights granted to the city of Oklahoma City by the provisions of the statutes of this state are in excess of the rights of such a city at common law, and they show the necessity for the legislative provision that has been made.

For many years actions were required to be brought in the county wherein service could be had upon the defendant. That rule has been relaxed. It was relaxed by the provisions of section 117, supra, to provide that they may be brought in the county in which some one of the defendants resides or may be summoned. It was relaxed by the provisions of section 206, supra, as to counterclaims and set-offs. It was relaxed by the provisions of sections 109 and 110, supra, as to actions pertaining to real estate. It was relaxed by the provisions of section 111, supra, as to actions for the recovery of fines, forfeitures, and penalties. It was relaxed as to foreign corporations by the provisions of sections 115 and 125, supra. All of the inconvenience

and watchfulness of those charged with their complained of by the plaintiff in this case would exist in any of those cases. It was within the legislative power to provide for the venue of actions against cities. After the Legislature had extended the powers of cities, as hereinbefore set forth, it was evidently of the opinion that the venue of actions against cities, which arose in whole or in part in a county other than that of the situs of the city, which of necessity would be actions for damages caused other than by governmental functions, could be maintained in the counties in which those actions or some part thereof arose. It so provided in section 112, supra.

It is contended that the title to chapter 83, Session Laws 1913, is insufficient. That title is as follows:

"An act amending section four of article one, chapter sixty-eight, Session Laws 1907-08, providing for the bringing of actions against domestic corporations in any county where the cause of action, or some part thereof, arose."

We find no insufficiency therein. It shows an intent to amend a section to provide for the bringing of actions against domestic corporations in any county where the cause of action or some part thereof arose.

It is contended herein that the language used by this court in Oklahoma Railway Co. v. Boyd, 140 Okla. 45, 282 P. 157, and Board of Com'rs of Kiowa County v. Kiowa Nat. Bank, 141 Okla. 271, 284 P. 634, is dictum and not controlling as to the issues presented herein. The law announced therein was stated in the syllabus, as prepared by the court, under the statute which requires a statement of the law involved in the case in a syllabus. It is in no wise dictum. In Board of Com'rs of Kiowa County v. Kiowa Nat. Bank, supra, this court held that, there being no statute fixing the venue of an action against a county in express terms, the county is subject to the general provision of the law fixing the venue of civil actions, and that the action may be maintained in the county in which the cause of action or some part thereof arose. We see no reason for departing from that construction of the law. It is applicable to the plaintiff in this case.

Under the provisions of section 112, supra, an action against a corporation created by the laws of the state may be brought "in the county where the cause of action or some part thereof arose." The causes of action pending in the district court of Canadian county arose in that county. That court has jurisdiction of those causes of action, and since it has jurisdiction of those causes of action, summons was issued to Oklahoma county for the city of Oklahoma City (section 167, O. S. 1931) and service thereof gave the district court of Canadian county jurisdiction of the persons of the city of Oklahoma City.

The alternative writ is discharged and the prayer of the plaintiff for a writ is denied.

RILEY, C. J., CULLISON, V. C. J., and OSBORN, BAYLESS, BUSBY, and WELCH, JJ., concur. SWINDALL and McNEILL, JJ., dissent.

On Rehearing.

McNEILL, J. (dissenting). I am unable to agree with the views expressed in the majority opinion in holding that the venue of civil actions is applicable to municipal corporations so that a municipality may be sued in a county other than the county of its situs. The almost universal rule, as I read the authorities, is explicitly to the contrary.

In 19 R. C. L. page 1049, the following rule is announced:

"It is held by the great weight of authority that an action against a municipal corporation, whatever the character of the action, is inherently local, and must be brought in the county in which the municipality is situated. It is considered to be of the greatest importance to the welfare of such bodies, and of the citizens whom they serve, that their officers should be permitted to remain at home and discharge their public duties, instead of being called hither and thither over different parts of the state to attend to litigation. For these reasons a statute providing that a corporation may be sued in any county in which it regularly exercises its franchises has been held not be to applicable to a municipal corporation."

Also, in 27 R. C. L. page 790, as follows:

"In many jurisdictions the broad proposition is laid down and unswervingly followed that actions against municipalities, whatever their character, must be brought in the county in which the municipality is situated. Municipalities cannot change their situs or their place of abode. They cannot remove from one place to another, and sojourn for a time at this point or that. They remain stationary; hence they must be sued where they are found. Furthermore the magnitude and importance of the functions of municipal government are constantly increasing with the growth of population, and of the various and complex agencies employed in cities and towns in the public service, and these functions require the constant presence and watchfulness of those charged with their

direction and management. To permit these great public duties to be hindered or delayed in their performance, in order that individuals or private corporations might more conveniently collect their private debts, would be to pervert the great object of the creation of municipal corporations. So, an action against a municipal corporation for injury to real estate must be brought in the county where the municipality is located, although the injured property lies in another county."

In McQuillin, Municipal Corporations (2d Ed.) vol. 6, sec. 2655, p. 515, it is stated:

"It is generally held that a municipal corporation may be sued only in the court having jurisdiction in the county or district or circuit in which the municipality is located unless otherwise expressly provided by law. Where a city is situated on the line between two counties, the action may be brought in either county. The reason given therefor in some cases is the inability of courts to serve process and enforce their judgments outside of their county. While in other cases it is held that such actions are local and not transitory, and must, therefore, be brought in the county where the municipality is situated. Suit against a municipal corporaton for trespass to real estate is a local action and may be brought in the county or place in which the cause of action arose. In some states the action may be brought in the county where the plaintiff resides or the defendant municipality is situated; in others, it must be brought in the county where the cause of action or some part thereof arose."

See, also, 44 C. J. 1471.

In the case of City of Dallas v. Hopkins, 16 S. W. 852, the Court of Civil Appeals of Texas, in paragraph 1 of the syllabus, which reflects the law in the case, held as follows:

"The general rule that a municipality must be sued in county of its domicile because public policy demands that officers of municipal corporation should not be required to leave their city and duties of their offices to answer suits against municipal corporation filed in other counties is subject to exceptions, such as statutory rules providing otherwise, by reason of nature of cause of action, etc."

In the body of the opinion, the court said:

"The two cases relied on by appellant are decided upon the theory that, in the absence of some special statutory authority otherwise, a municipality must be sued in the county of its domicile, and, inasmuch as the statute authorizing suits against corporations in any county in which the cause of action, or any part thereof, arises, does not specially mention municipal corporations, such are excluded from the exception. That public policy demands that the officers of a municipal corporation should not be required to leave their city and the duties of their offices to answer suits against the municipal corporation filed in other counties. This holding has ample authority to support it. See 19 R. C. L. 1049; 44 D. J. sec. 4680, p. 1481; 27 R. C. L. sec. 12, p. 790; 19 R. C. L. sec. 138, p. 1049; 28 Cyc. p. 759, sec. E. This undoubtedly is the general rule. But there are exceptions to this rule, by reason of statutory rules providing otherwise, by reason of the nature of the cause of action, etc. In the City of Tahoka v. Jackson, supra, the Commission of Appeals held that a municipal corporation might be sued out of the county of its domicile on a promise in writing to pay in a county different from that of its domicile. The court, on certified questions from the Waco Court of Civil Appeals, said in part:

" 'By the great weight of authority in other jurisdictions, it has been held that at common law an action against a municipal corporation must be brought in the county in which the municipality is situated. 19 R. C. L. p. 1049. It has been held by the courts of other states that a statute providing that corporations may be sued in counties other than that in which they had their domicile is not applicable to municipal corporations. Phillips v. Baltimore, 110 Md. 431, 72 A. 902, 25 L. R. A. (N. S.) 711; Nashville v. Webb, 114 Tenn. 432, 85 S. W. 404, 4 Ann. Cas. 1169.' "

A municipality is by nature localized in the general sphere of its operations. Parks v. City of Decatur, 138 Fed. 550. Its history in this state arose prior to the adoption of our Constitution and state statutes. Its main purposes are to perform public and political functions, and, in that respect, it differs from private and moneyed corporations which are organized and created for private purposes. It constitutes a part of the government partaking of the sovereignty of the state, having a complete self-government of its own, functioning in consonance with state and federal Constitutions. In the earliest history of this nation we find that the towns in some of the New England states were the unit of local government. Donahue v. City of Newburyport, 211 Mass. 561, 98 N. E. 1081.

It is stated in the majority opinion:

"The Legislature of Oklahoma has made no provision for the venue of actions against cities, unless it has provided therefor in sections 109, 110, 111, 112, 117, or 206, O. S. 1931. Section 117, supra, provides for the venue of 'every other action', meaning thereby actions the venue of which has been elsewhere provided for, except as therein pro-

vided. By its terms it is not applicable to actions the venue of which has been provided for by other sections. If the venue of the actions in question has been provided for by section 112, supra, the provisions of section 117, supra, have no application.

"Whether or not the venue of the actions in question has been provided for by the provisions of section 112, supra, is dependent upon whether or not the Legislature intended to include cities within the term 'corporation,' as used in that section. If it did so, that section provides the venue of the actions in question, for they relate to causes of action which arose in Canadian county That section provides:

" 'An action, other than one of those mentioned in the first three sections of this article, against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, or be summoned, or in the county where the cause of action or some part thereof arose.' "

Unless our statutes expressly include municipalities or municipal corporations in their venue provisions, or unless it is clearly inferable therefrom, the same should not be extended by implication.

In the case of City of Mineral Wells v. Acme Brick Co. (Tex. Civ. App.) 262 S. W. 177, it was said:

"Under our statutes the exceptions to exclusive venue apply to all 'persons', and under the general rule, as well as by express provision of the statutes (article 5504), the word 'person' when used in a statute includes 'corporation.' But it is not expressly made to include municipalities, or municipal corporations, and by the overwhelming weight of authority it is held in deference to the demand of public policy, to which we have adverted, that unless a venue statute expressly includes municipal corporations in the exceptions to exclusive venue provisions, those exceptions will not be extended by implication. We so hold in this case. 19 R. C. L. p. 1049; City of Corpus Christi v. Oil Co. (Tex. Civ. App.) 246 S. W. 718; Pack v. Greenbush Tp., 62 Mich. 122, 28 N. W. 746; Mayor of Nashville v. Webb, supra; Piercy v. Johnson City, supra; Heckscher v. Philadelphia (Pa.) 9 Atl. 281; Phillips v. Baltimore, 110 Md. 431, 72 Atl. 902, 25 L. R. A. (N. S.) 711."

Said section 112 was formerly section 4 of article 1, chapter 68, S. L. 1907-8; that act was entitled, "An Act designating the counties in which civil actions may be brought and declaring an emergency"; section 4 of article 1 thereof being as follows:

"Section 4. An action, other than one of those mentioned in the first three sections of this article, against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, or be summoned; but if such corporation be an insurance company, the action may be brought in the county where the cause of action, or some part thereof, arose."

It is to be observed that said section 4 of article 1 of said chapter 68, relating to an action which may be brought in the county where the cause of action or some part thereof arose, has only reference, as stated, to an action against an insurance company. Subsequently this section was amended by chapter 83, Session Laws 1913, so as to make the venue of actions to include domestic corporations. The title to the act of 1913 being as follows: "An act amending section 4 of article 1, chapter 68, Session Laws 1907-08, providing for the bringing of actions against domestic corporations in any county where the cause of action, or some part thereof, arose." Said section 4, as amended, reads as follows:

"An action, other than one of those mentioned in first three sections of this article, against a corporation created by the laws of this state, may be brought in the county in which it is situated, or has its principal office or place of business, or in which any of the principal officers thereof may reside, or be summoned, or in the county where the cause of action or some part thereof arose."

In the majority opinion, it is said:

"The contention of the city is based largely upon what it says is a rule of the common law, that a city may not be sued outside of the county of its situs. It contends that that common-law provision is the law of this state by virtue of the provisions of section 2, O. S. 1931. That section does not provide that the common law shall be the law of Oklahoma. It provides that:

" 'The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object.'

"The common law does not remain in force in Oklahoma. The common law, as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people, remains in force in Oklahoma in aid of the general statutes of Oklahoma,

but not in derogation of the general statutes of Oklahoma, and statutes in derogation of the common law are to be liberally construed to promote their object. The common-law meaning of the word 'corporation' must yield not only to the common-law meaning of the word 'situated', but to the condition and wants of the people, as explained in the section."

In my opinion the real and apparent difficulty is in properly construing the common law and failing to consider it as an existing part of the law in force in the state of Oklahoma. It is my conclusion that the common law is at times very positively in force in this state.

In the case of Hoppe Hardware Co. v. Bain, 21 Okla. 177, 182, 95 P. 765, Mr. Justice Hayes said:

"When the people in 1889 came from the different states into Oklahoma, they brought with them the rule of the common law as recognized and promulgated by the American courts. McKennon v. Winn, 1 Okla. 327, 33 P. 582."

The state of Kansas, since the year 1855, has had the same identical statute as section 2, O. S. 1931, supra.

In Dassler's Kansas Civil Code, Annotated, the author, in speaking of that section of the statute, said:

"Under that statute which governs the matter, the common law of England remains in force in Kansas in aid of the general statutes only so far as it is modified by constitutional and statutory law, judicial decisions, and the conditions and wants of the people."

In the case of Sattig v. Small, 1 Kan. 170 (1862), it was said:

"It matters not in this case, whether by force of statutes of any of the territories of which Kansas, at different times, was part. The common law was in force here when the organic act passed. By law of 1855 (Statutes, p. 469), the common law of England and all statutes prior to 4 James 1, not local to that kingdom, and of a general nature, except statutes for the punishment of crimes and misdemeanors, were adopted 'as the rule of action and decision in the territory.' This adopted the common law as to rights of action and forms of remedy so far as it was consistent with the Constitution and laws of the United States, and the statutes of Kansas."

In the case of Tousley v. Galena M. & S. Co. (1886) 24 Kan. 328, the Supreme Court of Kansas, in construing the interest conveyed in dedicator's deed of lots, held:

"By the common law, a conveyance of a lot or tract of ground bounded upon a street or a highway, conveyed not merely the grantor's interest in the lot or tract, but also that in the street or highway upon which it abutted, to its center. The common law is in force in this state, save as modified by constitutional and statutory law, judicial decisions, and the condition and wants of the people. That rule of the common law is not in terms repealed, and is in force, save as it is modified by chapter 78 of the Compiled Laws 1879, which provides that the filing for record of the plat of a town or addition thereof shall be a conveyance to the county in fee, in trust for the public, of all streets, alleys, etc."

It is my opinion that the common law is in force in this state in the same manner as described by Dassler, supra. If that premise is correct, then it seems to me that the majority opinion falls in error, because there is no statute in this state fixing the venue of civil actions expressly applicable to municipal corporations. Upon that basis the rule of the common law governs. That rule is strictly interpreted. Under the common law no action could be brought against a municipal corporation outside of the county where it was situated unless expressly authorized by statute. See Marshall v. Kansas City, 95 Kan. 548, 148 P. 637. A contrary rule is against public policy. Phillips v. Mayor, etc., of Baltimore (Md.) 72 Atl. 903; Pack v. Township of Greenbush, 62 Mich. 122, 28 N. W. 746; City of Corpus Christi v. Coffin (Tex. Civ. App.) 35 S. W. (2d) 202; Corpus Christi v. Oriental Oil Co. (Tex. Civ. App.) 246 S. W. 718; Simpson v. Neshoba (Miss.) 127 So. 692; Jones v. Comissioners of Bladen Co., 69 N. C. 412; Steele v. Commissioners of Rutherford, 70 N. C. 137; Piercy v. Johnson City (Tenn.) 169 S. W. 765; Heckscher v. City of Philadelphia (Pa.) 9 Atl. 281; State v. District Court (Minn.) 182 N. W. 165; Parks Company v. City of Decatur (C. C. A. Ill.) 138 Fed. 550; Board of Church Extension v. Taylor County (Ky.) 153 S. W. 747; Phillips v. Baltimore (Md.) 72 Atl. 902, 25 L. R. A. (N. S.) 711; Buck v. City of Eureka (Cal.) 31 P. 845; Gallup v. Sacramento & San Joaquin Drainage District (Cal.) 151 P. 1142.

Of course, venue can be waived, but in this case the plaintiff herein timely and properly presented this question to the trial court.

A municipal corporation "resides where its territory is, and where all of its constituents reside." Gallup v. Sacramento & San Joaquin Drainage Dist. Co. (Cal.) 151 P. 1142.

A corporation has a place of residence. Walcher v. Atchison, T. & S. F. Ry. Co. (Cal.) 101 P. 41.

There seems abundant authority to the effect that statutory provisions relating to corporations have no application to municipal corporations. The words "corporation" and "municipal corporation" do not appear to be convertible terms. Switzer v. City of Wellington, 40 Kan. 250, 19 P. 620; Moran v. Long Island City, 101 N. Y. 439; Id., 38 Hun. (N. Y.) 122; Emes v. Fowler, 89 N. Y. S. 685; Rosenstock v. City of New York, 91 N. Y. S. 737; Wallace v. Lawyer, 54 Ind. 501; Board of Church Extension v. Taylor County (Ky.) 153 S. W. 747; Donahue v. City of Newburyport, 211 Mass. 561, 98 N. E. 1081; Lineham v. Cambridge, 109 Mass. 212; Phillips v. Baltimore (Md.) 72 Atl. 902, 25 L. R. A. (N. S.) 711; State v. District of Narragansett (R. I.) 16 Atl. 901; Franklin Savings Bank v. Framingham, 212 Mass. 92, 98 N. E. 925; State v. Snyder (Wyo.) 212 P. 771; County of Sherman v. Simons, 3 Sup. Ct. 502; and Buck v. City of Eureka (Cal.) 31 P. 845.

In article 9 of the Constitution, all municipal corporations and public institutions owned or controlled by the state were specifically excluded from the term "corporation." To see the weight and force of this same exclusion, reference is made to the general form and arrangement of our statutes. There is a chapter devoted to cities and towns (chapter 29, C. O. S. 1921; chapter 33, O. S. 1931); another dealing exclusively with corporations (chapter 34, C. O. S. 1921; chapter 46, O. S. 1931). This chapter considers bridge corporations; building and loan associations; foreign corporations; guaranty companies; mining and manufacturing corporations; railroad corporations; religious, educational, and benevolent corporations; street railways; wagon road corporations; and co-operative corporations.

I find nothing in this chapter in dealing with the powers, duties, and liabilities of corporations which relates to towns and cities.

In the case of Donahue v. City of Newburyport, 211 Mass. 561, 98 N. E. 1081, supra, it was said:

"But in common speech it is rarely that a city or town is referred to merely as a corporation * * * The form and arrangement of our statutes show a manifest purpose not to treat cities and towns as corporations in the ordinary sense of that word. Separate titles of the Revised Laws relate to them."

See, also Lineham v. Cambridge, 109 Mass. 212; Phillips v. Baltimore (Md.) 72 Atl. 902; State v. District of Narragansett (R. I.) 16 Atl. 901; and County of Sherman v. Simons, 3 S. Ct. (U. S.) 502.

I conclude that there is no statute in this state fixing the venue of actions against a municipal corporation, unless it be section 117, O. S. 1931. I can see no force in the instant case to section 112, O. S. 1931. It seems clear to me that the common-law rule, in so far as it relates to venue of actions against municipal corporations, is not abrogated, but prevails in this state. This is salutary law.

An action against a municipality is of an inherently local nature. Heckscher v. City of Philadelphia (Pa.) 9 Atl. 281; Oil City v. McAboy, 74 Pa. 249; City of Mineral Wells v. Acme Brick Co. (Tex. Civ. App.) 262 S. W. 177. This is also significant in reference to service. Section 176, O. S. 1931, deals with the commencement of actions. It provides:

"A summons against a corporation may be served upon the president, mayor, chairman of the board of directors, or trustees, or other chief officer. * * *"

Section 6352, chapter 33, article 19, O. S. 1931, dealing with cities and towns, is as follows:

"The corporate name of each city governed by this chapter shall be, 'The city of ____,' and all, and every notice, and process whatever affecting any such city, shall be served upon the mayor, and in his absence upon the president of the council, and in the absence of both, then upon the city clerk."

It seems that at least it is inferable that service must be made on the proper officers within the city and not upon them in their absence from the city.

This again recognizes the common-law rule that an action against a municipal corporation is inherently local, and that the administrative officers are necessarily engaged at home in the duties of the city.

It is my view that there is no statute applicable to venue in dealing with municipal corporations and, consequently, the common-law rule must be applied, to wit, that a municipal corporation is suable only in the courts of the county in which it is situated, unless it be section 117, supra, providing that:

"Every other action must be brought in the county in which the defendant or some one of the defendants resides or may be summoned."

If that section can be construed to include municipal corporations, then it may be said that an exception has been made to the common-law rule. That section must be construed with section 6352, O. S. 1931, supra, which recognizes, as it seems to me, that the city cannot be summoned to answer an action against it when it is the sole defendant except by proper service upon it obtained within the territorial limits of said city. However, section 117 is not applicable in the instant case, for the reason that it appears that the immediate questions concern actions against the city of Oklahoma City as a sole defendant.

I am authorized to announce that Mr. Justice SWINDALL concurs in the views herein expressed.