## OKLAHOMA CITY v. ROSE.

No. 24687. Oct. 29, 1935.

Rehearing Denied March 17, 1936.

Second Petition for Rehearing Denied April 21, 1936.

Harlan Deupree, Municipal Counselor, for plaintiff in error.

608

Stuart, Bell & Ledbetter and J. L. Trevathan, for defendant in error.

PER CURIAM. This action was commenced in the district court of Canadian county by Joseph L. Rose against the city of Oklahoma City by petition alleging the filing under date of February 11, 1925, of a suit against the defendant in the district court of Oklahoma county covering the identical cause of action and the dismissal of such action in Oklahoma county on January 3, 1931. The petition is marked filed January 6, 1930, but was evidently lodged in the district court of Canadian county on January 6, 1931.

Plaintiff alleges damages to his farm by reason and as a result of an overflow of waters of the North Canadian river caused by negligent construction and maintenance of a dam or embankment in connection with and a part of the city's reservoir for its permanent water supply. He alleges that he owns the S.½ of S.E.¼ and lots 2, 3, and 4 of section 3, twp. 12 north, range 5 west, Canadian county, and farmed the N. W.¼ of section 11 of said township and range; that in the months of June and October, 1923, floods came down the North Canadian river and by reason of the levee and embankment maintained by the defendant without sufficient outlet to allow the natural flow of such flood waters to pass on down the course of the river, same were backed up against and overflowed plaintiff's land, and that his land "in said section 3 was flooded and became watersoaked and permanently injured by the raising of the general level of the water in said river, and the said floods stopped the drainage of said land"; that the market value thereof prior to the floods was $20,000 and after the floods same was not worth over $2,000. Plaintiff also asserted damages to the crops in the following language, quoting from his petition:

"That this plaintiff during the year 1923 was cultivating, planting and raising crops on the said northwest quarter of said section 11, adjoining said other tract, and that at the time of said overflows, by reason of said negligent construction of said dams, dikes and by-pass, in said months of June and October, 1923, the said northwest quarter of section 11 was overflowed by and inundated by the said waters of the North Canadian river, as aforesaid, and the said waters destroyed 80 acres of corn belonging to this plaintiff growing in said section 3, the same of the value of $2,400, 25 acres of alfalfa growing on the same, of the value of $1,250, and levees and fences on said land

of the value of $5,000, in the total amount of $8,650.

"That said overflow extended higher up to and around the plaintiff's dwelling and into his barn where 3,500 bales of alfalfa hay, a Ford automobile and farm machinery were stored; that in the said field on said described tract, there was 9,000 pounds of alfalfa seed not yet threshed, and all of said property, as aforesaid, was either damaged or totally destroyed, to plaintiff's damage in the sum of $4,020, and the said buildings by reason of said water standing around the same, and by reason of becoming watersoaked and weakened in the foundations were damaged in the sum of $200, for all of which the defendant has become liable on account of its negligence, as aforesaid."

The defendant filed a special motion to dismiss, on the ground that the court was without jurisdiction, and a special and general demurrer, both of which were overruled, and answered by general denial and by specifically pleading that:

"* * * It constructed on said property a large reservoir for the purpose of providing an adequate water supply for the inhabitants of its municipality; that said reservoir was constructed and maintained in a careful and prudent manner; that on the date as alleged in plaintiff's petition there occurred a heavy and unprecedented storm, rain, cloudburst, flood and other acts of God; that said flood and cloudburst and heavy downpour of rain were acts of God, and unprecedented and could not, with reasonable diligence, have been anticipated by this defendant, and that the damage done to plaintiff's property, if any, was not the proximate result of this defendant having constructed said reservoir on the North Canadian river, nor upon any failure of the said defendant to open certain flood gates at the main dam, but was due to unprecedented rainfall and the conditions existing upstream from said reservoir, over which this defendant had no control, and for reason whereof it was not responsible.

"The defendant, further answering, says that the land described in the plaintiff's petition would have overflowed in the rain at the time mentioned in plaintiff's petition, if said defendant never had constructed its dam, reservoir and waterworks system, and that said overflow and damage, if any, to said plaintiff was the direct result of said unprecedented rain, storm and act of God"

—and subsequently filed an amendment to its answer, pleading the two years' statute of limitation under subdivision 3 of section 185, C. O. S. 1921.

Plaintiff replied by way of general denial, and during the progress of the trial amended his reply by allegation dictated into the rec-

ord that if the floods of 1923 were unprecedented, the negligence of the defendant concurred in and contributed to the damage complained of.

On these pleadings and issues presented thereby, the case was tried to a jury on May 12, 1932, and resulted in a verdict and judgment in favor of plaintiff for $7,000 for damage to lands owned by plaintiff in section 3, and $1,154 for crops in section 11.

The defendant filed its motion for new trial in due time alleging 14 separate grounds upon which it asserts that the verdict and judgment rendered and entered against it should be set aside and vacated, and upon such motion being overruled and denied by the trial court, preserved its exceptions and gave notice of appeal, and in due time perfected its appeal to this court. The defendant sets out in its petition in error 38 grounds upon which reversal is sought of the judgment entered against it. In its able and exhaustive brief the defendant city presents the errors complained of under six propositions.

For convenience the parties will be referred to in this opinion as they appeared in the trial court.

Before considering the several propositions argued by the defendant in its brief upon which it seeks a reversal of the judgment against it, upon a careful review of the record, it appears that plaintiff in his petition alleges but one cause of action in damages, setting forth several elements in various amounts aggregating $30,870, for which he prays judgment with interest and costs; that the cause was tried to a regular panel of twelve jurors, and that the trial court properly instructed the jury that:

"As many as nine of you may return a verdict. If nine or more of you, less than your whole number, reach a verdict, those of you agreeing thereto must sign it, but if you all agree it may be signed by one of your number as foreman."

The jury returned two verdicts, one of which was for $1,154 for value of crops in section 11, and was signed by nine jurors. The other verdict was for $11,000 for damages to land in section 3 (reduced by action of the trial court under plaintiff's remittitur to $7,000), and was also signed by nine jurors. Examination of these separate verdicts discloses the fact that John Schrieber, juror No. 1 on the jury list, joined in the first verdict, but did not join in the second, and that A. A. Morris, juror No. 11 on the jury list, joined in the second verdict, but did not join in the first.

Assignment of error No. 8 in defendant's motion for new trial is that "The verdict is contrary to law." Proper exception was taken to the overruling of motion for new trial, but the error, if it be so classed, or irregularity in the verdict, is not argued or urged in this court. Quaere: Was the verdict rendered by nine jurors?

In the case of Drum Standish Commission Co. v. First National Bank & Trust Company of Oklahoma City, 168 Okla. 400, 31 P. (2d) 843, this court held that:

"Assignments of error presented by counsel in their brief, unsupported by authority, will not be noticed on appeal unless it is apparent without further research that they are well taken."

The record does not disclose that defendant objected to the error or irregularity in the verdict at the time same was received and filed. No objection having been made and the question not being urged in the briefs with authority cited, we conclude that it is unnecessary to pass upon the question in this court. Stanard v. Sampson et ux., 23 Okla. 13, 99 P. 796.

The defendant urges in its first proposition that the district court of Canadian county had no jurisdiction in this case, contending that, since it is a municipal corporation situated wholly within Oklahoma county, there being no joint defendant upon whom service was had in Canadian county, it could not be sued in Canadian county and served with summons in Oklahoma county. This contention of defendant has been passed upon adversely and determined by this court in the case of Oklahoma City v. District Court of Thirteenth Judicial District et al., 168 Okla. 235, 32 P. (2d) 318, in which rehearing was denied on March 13, 1934. In that case it is held, quoting from the syllabus, that:

"2. Under the provisions of section 112, O. S. 1931, an action against a municipal corporation created by the laws of this state may be brought in the county where the cause of action or some part thereof arose, even though that county is a county other than the situs of the municipal corporation.

"3. Where an action against a municipal corporation created by the laws of this state is brought in the county where the cause of action or some part thereof arose, summons may be issued to the county of the situs of the corporation under the provisions of section 167. O. S. 1931."

This opinion and decision in the case cited is controlling upon the question presented in this cause.

The second, third, and fourth propositions are presented together in defendant's brief, and may be summarized as follows: There is no evidence tending to support the allegations in plaintiff's petition of negligence; the defendant having constructed an embankment with openings sufficient to carry the water from any flood which would ordinarily be expected, it is not liable if the openings provided are not adequate to carry off the flood waters of an unprecedented flood; the evidence shows that the damage to plaintiff's property was suffered by reason of an unprecedented flood which ordinary precaution on the part of the defendant in the construction of its embankment would not have provided against.

The floods on the North Canadian river in June and October, 1923, in connection with the embankment constructed by the city of Oklahoma City as a part of its permanent water supply, gave rise to actions for damages by other land and crop owners in the immediate vicinity of the plaintiff's land and crop. This court has heretofore rendered decisions in such causes of action in the following reported cases: Oklahoma R. Co. v. W. H. Boyd, 140 Okla. 45, 282 P. 157; Oklahoma Ry. Co. et al. v. Woods, 164 Okla. 215, 23 P. (2d) 217; and Oklahoma Ry. Co. et al. v. Mary Boyd, 167 Okla. 151, 28 P. (2d) 537. In these cases this court has had before it practically every element of damage involved in the cause now under consideration, and in each instance judgments entered against the defendant were sustained and affirmed. It is true, however, that each case must be considered in the light of the evidence offered and introduced by the parties, the ruling of the trial court upon objections made to the introduction of such evidence, the instructions given by the court over the objections of the losing party, the instructions requested by such party and refusal by the court to give instructions so requested, as well as all other elements which enter into the regular and orderly trial of a controverted question between two litigants, and it is readily conceivable that in practically identical cases, tried before the same court, one should be affirmed upon appeal and the other reversed. It is contended by the plaintiff that this court having determined in the cases referred to the salient features of the elements of damage to land and crops resulting from the same flood waters as restrained and impeded in its natural flow by the same diverting embankment constructed and maintained by the defendant should, and as a matter of right and justice ought to, be determinative of the same questions coming up for determination in the case now under consideration. With this contention we do not agree.

The burden of proving negligence on the part of the defendant in the construction and maintenance of the embankment in question and that the damage suffered by plaintiff resulted from such negligence was upon the plaintiff. To sustain this burden he introduced numerous witnesses who testified as to the condition of the land and crop before and after the floods, the value of the lands before and after the floods, the height of the water during the 1923 floods as compared with floods of previous years; that at the time of the flood the water stood 8 to 10 feet higher on the upper side of the embankment than on the lower side; that the flood waters covered the land and crops of the plaintiff, and the land after the flood was covered with sand and sediment that would not mix with the soil, that the crops were destroyed and the lands greatly damaged; but in establishing these facts plaintiff's witnesses as well as witnesses introduced by the defendant established beyond all reasonable doubt the indisputable fact that the June, 1923, flood was the greatest flood on the North Canadian river up to that date, and that the October, 1923, flood was much greater than the June flood. Counsel for plaintiff in their answer brief state that the testimony of W. H. Boyd covered the whole question of negligence in the construction of the dam and levee with one opening instead of three, as formerly. A review of the testimony of this witness fails to affirmatively show negligence in the construction of the embankment by defendant. He testified that before the construction of the embankment by the city of Oklahoma City there had been a railway fill at the same place maintained by the Oklahoma Railway Company in which there were three openings for the passage of the waters of the North Canadian river, but that when the defendant constructed the present embankment it left only one opening, but there is no necessary implication that the provision made for the passage of the water was not adequate and proper to allow the passage of the waters from any flood that reasonably prudent men might expect. On the other hand, C. E. Bretz, a witness introduced by the defendant, gave definite and explicit evidence as to the construction of the em-

bankment. By his uncontradicted testimony it is established that the three original openings had a capacity of approximately 5,300 square feet and that the one opening after the new construction was completed had a capacity of 5,400 square feet; that by reason of the construction, the one opening would carry from 25 to 50 per cent. more than the three openings that had previously existed; that the one opening of 5,400 square feet capacity was sufficient to carry away the water of any previous flood on record; that it would carry from 25,000 to 30,000 cubic feet of water per second; that the record of the greatest flood prior to the construction was 13,640 cubic feet per second, and the opening was more than sufficient to take care of that amount of flood water; that the June, 1923, flood, the largest flood on record up to that time, had a capacity of 28,000 cubic feet per second, and that the October, 1923, flood had an estimated capacity of 133,000 cubic feet per second; that the construction was made by the defendant after consulting with nationally known authorities on the subject and the expenditure of a considerable sum of money in making such investigation, and the recommendations of these authorities were followed by the defendant in making the construction complained of.

This witness also testified, without being contradicted, that he was at the scene of the flood in and around the embankment during October, 1923, and that the flood waters washed the embankment out at what is known as stop 21 and washed the bridges out at the other end of the embankment; that the embankment was washed out for a distance of about 520 feet and for a depth of 18 feet; that the embankment at stop 21 was washed out at about 3:30 p. m. and the railway bridge at the other end of the embankment was washed out at 5:35 p. m., and that the crest of the flood was not reached until 7 or 8 o'clock in the evening, and at the crest of the flood the waters had free flow down stream. The inevitable conclusion that must be reached in the light of the testimony of this witness, and the composite testimony of all of the witnesses that the floods of June and October, 1923, were unprecedented floods, is that the injury and damages suffered by the plaintiff came as a direct result of acts of God, and that such acts of God were the proximate cause of the loss and damage, for which defendant could not be held liable.

The plaintiff alleges in his petition that his lands in section 3 were permanently damaged by reason of the construction of the permanent improvements of the defendant in the construction of its water reservoir, that his land "in said section 3 was flooded and became watersoaked and permanently injured by the raising of the general level of the water in said river," and plaintiff's witnesses F. A. Smith and C. J. Beeler testified that since the construction of the embankment in 1918 the water had been raised in the river and that it was apparent, but no proof was produced from these witnesses or any other witnesses that the lands of plaintiff were watersoaked and permanently injured by reason of the raising of the water level. In the absence of any proof it is as reasonable to conclude from the testimony of these witnesses that the lands of plaintiff were rendered more productive and valuable by reason of subirrigation from the river as it is to assume damage was inflicted thereby.

It was the duty of the defendant city to so construct its embankment and by-pass in connection with its permanent water supply to carry off the waters of the North Canadian river under all ordinary circumstances in the usual course of nature, even to the extent of flood waters as may in the natural course of events be expected, though but of occasional occurrence, but it is not bound to so construct them as to carry off the waters of unprecedented floods. Chicago, R. I. & P. Ry. Co. v. Turner, 141 Okla. 267, 284 P. 855, and cases therein cited.

If the defendant failed in this duty and by reason of such failure the waters of a flood that might be ordinarily expected were retarded in their flow and damage to the property of others resulted therefrom, the defendant would be liable for such damages but only in the event such faulty construction is by competent proof shown to be the proximate cause of such damage, or that it concurred in and contributed to the resultant damage. A review of the whole record herein convinces us that the defendant city fulfilled its duty in the construction of its waterworks facilities. and that the damages suffered by the plaintiff were due to natural causes which could not have been prevented by any reasonable precaution or foresight on the part of the defendant.

In the case of Chicago, R. I. & P. Ry. Co. v. Turner, above cited, this court had under consideration a claim for damage resulting from the same flood of October, 1923, at another point on the North Canadian river, and

in that case it was held that the evidence failed to show that the defendant railway company had not taken precautions against all ordinary flood conditions, and there was, therefore, no evidence to support the allegations of negligence, and that the defendant's motion for a directed verdict should have been sustained. The defendant urges that the rule laid down in this case should be followed rather than the conclusions reached in the W. H. Boyd, Mary Boyd, and Woods Cases above referred to. We do not find that the conclusions reached in these several cases are in conflict. Under the evidence and record in the case under consideration, it is our conclusion that the defendant fulfilled its duty in the construction of its permanent improvements in connection with its water supply, and that there is a failure of proof of negligence on its part, and defendant's demurrer to plaintiff's evidence should have been sustained, and failing in this, at the close of all the testimony, defendant's request for peremptory instructions should have been granted.

Since this conclusion has been reached, it is unnecessary to pass upon the refusal of the trial court to submit to the jury interrogatories requested by the defendant, or to consider the other assignments of error.

For the reasons assigned, the judgment is reversed, and the cause remanded.

The Supreme Court acknowledges the aid of Attorneys J. Wood Glass, P. W. Holtzendorff, and Frank Ertell in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Glass and approved by Mr. Holtzendorff and Mr. Ertell, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.

OSBORN, V. C. J., and RILEY, BAYLESS, CORN, and GIBSON, JJ., concur. PHELPS, J., dissents. McNEILL, C. J., specially concurring.

McNEILL, C. J. (specially concurring). I concur as to the question of venue which permits a municipality to be sued in a county other than its situs for the reason that this court heretofore has spoken adversely to my views on that question. See Oklahoma City v. District Court, 168 Okla. 235, 32 P. (2d) 318, and my dissenting opinion filed therein. I entertain the same views as set forth in my dissenting opinion, but I am bound by the majority opinion in that case.